Good morning. My name is Lawrence Mewers. I'm the attorney for Appellant and Cross-Appellee Mewers Law Firm. I apologize for my voice this morning. I have a bad cold and it's just hold the mic closer to you. That's great. Thank you. All right. Thank you. I'm excited to be here this morning because as far as I know this is the first case under the Perishable Agricultural Commodities Act heard before the circuit. So it's always nice to be the first. Mewers Law Firm in this case is trustee of the Packet Trust court ordered by the United States District Court for the benefit of 16 suppliers that sold produce to Crossroads Fresh Connection. Mewers Law Firm is also the assignee of the assets of Crossroads Fresh Connection. Say that again. Say that last part again. Mewers Law Firm is also the assignee of the assets of Crossroads Fresh Connection. Does that make a difference here? I don't think it really does. I don't think that it kind of confuses the issues a little bit but we think our strongest arguments are as the trustee of the suppliers and we appealed only the judge's denial of the supplier's rights and we're here to enforce the supplier's rights. I think that really Crossroads claims against reasors are really immaterial to these issues and the suppliers have the much stronger case. Thank you. Just to go over the facts of the case a little bit because I think it may be illustrated of what is going on here. So Crossroads Fresh Connection entered into an agreement with reasors, a grocery chain in Tulsa, Oklahoma to be its captive produce supplier and this relationship went on for about four years and as part of that relationship Crossroads bought from suppliers all over the United States that are growers and producers of fresh fruits and vegetables and the supplier sold Crossroads. Crossroads in turn distributed that produce and sold it to reasors. This situation went on well. There was a lot of produce moved. Everybody was happy with the relationship until one day reasors came to Crossroads and said this was on a Monday. On Friday you're done and you'll no longer be the produce supplier. As a result of that everything changed. Crossroads let suppliers know that they didn't have enough money to pay their invoices in full. That's where we got involved and we filed an action in the U.S. District Court on behalf of the 16 suppliers and we obtained a temporary restraining order to freeze all the assets of Crossroads Fresh Connection. And then we turned that into a preliminary injunction to marshal the assets of Crossroads Fresh Connection and the District Court named our firm trustee to collect those assets on behalf of the suppliers. That order required anybody that was in possession of assets of Crossroads to pay that money to Muir's law firm. That notice was sent to reasors. Reasors held the primary asset of Crossroads Fresh Connection which was a $409,000 receivable. Crossroads sold produce to reasors. Reasors owed Crossroads $409,000. When it came time to obtain payment for the $409,000 we only got a check for $100,000. And reasors said we're not paying the balance of the $308,000 because Crossroads owed us under this quarterly rebate agreement and we're keeping that money to satisfy that amount. Let me ask you a question. So you had a receivable or a reasors owed Crossroads $409,000. What would your position be if reasors talked to the principal of Crossroads and said I'm not going to pay you $409,000 but I will pay you $375,000 and the principal said that's fine I'll take it. What would your position be? If there was no grounds for that I would say that the entire amount was owed because you've been I want to assume that this was before you're involved in the case because this receivable existed before you became involved, right? Okay. And so let me let me phrase it let me see if I can change it up a little bit for you. What if there Crossroads wanted to sell reasors $409,000 worth of produce and reasors said no it's too much and Crossroads says well I'll give you a 10% discount and reasors says okay I'll take we'll buy it then. What how about then? Then because the contract between Crossroads and reasors was for that 90% 10% discount the trust only applied to that 90% and nothing more was owed. Okay so the trust the trust is limited to the amount that reasors is entitled to receive or or that Crossroads is entitled to receive for the produce. Correct. Okay. Okay and in this you you raise an interesting point that I think is at the crux of this dispute. And that is is there a contractual right for reasors to obtain this discount on the produce? And they're acting through the case and really the what's in their craw is they said you know hey we have this 3% rebate that is owed to us and we really owe only owed 97% of the produce. So therefore we're taking that 3% discount and we're paying the 97% we owe and therefore we don't owe any more. And I think that argument is wrong. It's a fallacy. Because that contract does not provide like the example you gave that there was a 10% discount. There was not a 10% discount on these sales. The produce sales the the invoice was owed in full. There's no contract or no agreement between the two That was owed. There's no defense to it. The rebate agreement. Why wouldn't even in Judge Carson's example. Why wouldn't the trust flow through to all of the monies? It wouldn't flow through to the full 100% because that's not was wasn't the contract in which the supplier sold. Isn't that the very point that reasors is raising in this case? They are asserting a contract interest and saying that trumps the trust. They're saying but it's not a contract interest. The only right they have to not pay. The agreement of rebate. Yeah but the rebate isn't to the rebate is a separate agreement. It has nothing to do with the invoices. That amount was invoiced by Crossroads to reasors and paid independently. It did not excuse or extinguish payment of invoices. So you see as very sacrosanct the invoices and how they track and who gets what under the invoice. Correct. That is the contract between the parties. That's the pure thing under PACA. Right. That is what the contract. There's no you know for example there isn't an overriding master vendor agreement that says this rebate we get to set it off against the amount on the invoices. It's the only right that reasors has to not pay the three hundred and eight thousand is under a common law set off. That's the only thing they're doing. There's no contractual right to not pay it. Those invoices are owed in full. The practice of these parties in the entire course of their dealing was to pay the invoices in full and then turn around and pay the rebate separately. And the only way that rebate in your view could have been honored would be if somehow the producers were a part of that agreement. Is that right? I don't think that the producers had anything to do with that. I'm saying if they could have. Yeah if they could have. If they could have. That was not a contractual right that they had between the parties. And mind you reasors did not set this off until after the preliminary injunction. After they were notified. And then only then did they set off all but eighty five thousand. And the first eighty five thousand they set off after Crossroads was out of business. Would your case be cleaner if the set off related to a completely different type of transaction? For example if reasors had sold Crossroads a truck. And Crossroads owed them money for this truck. And reasors owed money for produce to Crossroads. Would your case about the set off be cleaner in that instance since there wouldn't be any relation between the produce and the amount that Crossroads owed reasors? That would be cleaner. But I say this is no different than that. The rebate had nothing to do with the amount that was owed for the produce or for those invoices. I don't think there's any difference other than the rebate. I don't know. And mind you they set this the party set this transaction up to work this way. That there was nothing no correlation between the two. They didn't set it up as a discount. They didn't set it up as a set off against those invoices. I don't know. Did Crossroads it looked like the principal of Crossroads agreed to the set off. So and I've got a follow up so just am I right about that? Right to a hundred and seventy two thousand of it. And so did the did the Crossroads principal make that agreement in violation of your preliminary injunction? The preliminary injunction was not in place. Okay and so I guess did you get a TRO before that? Yes. Okay did they make it in violation of the TRO? I don't think that the TRO was in place because that was on the right after they went out of business and I think the TRO went in place a couple of days after that. Okay so Reesers asserted the right or a claim to this money to these rebates before you received your TRO. Right. I just want to make sure that the assertion didn't come after you tied up the money. Well they only in fact set off eighty five thousand prior prior to the preliminary injunction and the entire rest of the set off was after the preliminary injunction. Okay but the but the agreement and I read the email as sort of as seeming to agree that they got the whole hundred and seventy something thousand but that Crossroads would appreciate it if they didn't take it all at once. Correct. Okay. Correct but but. And did Crossroads have the authority to make that agreement on behalf of the suppliers? No and that was a breach of if this was only an agreement between Crossroads and Reesers this would be okay if there's nobody else involved but the problem here and also the consent exception to that you can't set off a trust against personal claim is that if there's a third party involved. Now Reesers or Crossroads standing as a PACA trustee for suppliers it breached that trust and its rights by allowing this set off. It could not abrogate the supplier's interest in that by making a sweetheart deal with with Reesers. So that's why we're enforcing the supplier's rights because that consent has nothing to do with the supplier's rights. What about the idea that there were two trusts? There are. Do you disagree with that? I don't disagree with that there is two trusts. And there's one trust having to do with the transaction between Reesers and Crossroads. Correct. And the other one's between the suppliers and Crossroads. Correct. Okay. How do we get to that second trust? Isn't it one big trust? Well it's two separate trusts. Isn't that the view that would most help you? You have the suppliers they supply. The Crossroads buys the product. They are a trustee. And doesn't their interest the supplier's interest continue even though? It does. Produce is sold to Reesers? It does. Isn't it one big trust? It is one big trust. I don't understand how we get to two trusts. We only get to two trusts because we have the strange situation here is that we brought Crossroads in as a plaintiff in this. But if you take if you take Crossroads claims out and ignore them there's one trust on behalf of suppliers and their trust asset. One trust involving three parties. Right. So the trust assets of the supplier's trust was the produce. That produce went to Reesers. Reesers received that trust asset and Reesers and that is what the trust asset Reesers received. Reesers has not paid for that produce. Hence our claim here asking this court for an order that orders Reesers to pay that produce for the benefit of suppliers. Can you trace the produce invoices from the suppliers to Crossroads and Crossroads to Reesers in a way where we know that you're not claiming trust funds that might be for fully paid produce? It's a floating commingled trust and it doesn't matter. So all the trust That's sort of the same thing that you have with the rebates. It's a floating deal where at the end of each quarter they settle up on the rebating money for the purchase of the same produce that was passed up by Crossroads. But the $308,000 in rebates was not for the produce that they're paying. That was for produce sales going back years. If only $12,000 of that was for the produce that they actually sold. So I see that my time is done. I was going to reserve time. In closing, the Luddy Perry case from the Second Circuit is instructive here and I ask this court to follow it. Reesers received a pack of trust assets in the form of produce. It failed to pay for that produce and the suppliers have a superior interest in it and Reesers could not set off against the supplier's interest in that produce. Thank you very much. Thanks. Am I good there, Your Honor? You're fine. Your Honor, it's Chuck Greeno for Reesers. Thank you for hearing from us today. Judge Briscoe, I'd like to address an issue that you raised in questions to Mr. Mears and respectfully disagree with the point that Your Honor made. I thought you might. There is not one big trust. The case law says that there are two separate trusts and we outline those in a chart in our briefs. I'm a chart guy. When I'm analyzing trusts and parties, I've got to put things in charts and hopefully that's helpful to the court. The cases say, the So Good Potato case specifically says, there is not a trust from A that A can enforce directly against C. That's what we have here. So Good Potato Chip, a bankruptcy case? It is, Your Honor. Is this a bankruptcy case? It's not, Your Honor, but the issue isn't whether it's bankrupt. Bankruptcy, I think we can acknowledge, is a whole different world. Absolutely. Different code, different statutes, and there's a lot of discussion about priorities and security interests and things like that. We don't have that in this case. We're talking about a trust. Well, we are, Your Honor, but bankruptcy doesn't change property law. I'm an old beat-up Chapter 7 bankruptcy trustee, so I apologize if I start acting like I know something about the bankruptcy code. Bankruptcy changes rights, but it doesn't fundamentally change property rights or contract rights. Assets that are in a bankruptcy estate are determined under state law, and I think that's what So Good is saying. You can't analyze what's in or outside of a bankruptcy estate without looking at other law. This other law happens to be a combination of the packet trust law and state law. And that's how you get to the point. You're looking at whether or not the $300,000, I guess, we'll talk about that number, whether that was in property, and we'll use your vernacular, the property of the estate, the estate being, I guess, Crossroads. The property. Now you're thinking about it, you would say it's not even there, not all of it, because some of that property is really owned by Reesers. What's in the supplier's trust is a breach of contract claim that Crossroads has against Reesers. If this was in state court and Reesers didn't pay and PACA wasn't involved, Crossroads would have to sue Reesers for the money. Talking about something as an account receivable is a shorthand label that we use, but it's not really a legal right or remedy recognized at law. It's shorthand for breach of contract. If you look at the amended petition in this for breach of contract failure to pay. But all that can be put into the trust are the assets of Crossroads. Congress creates a trust. It creates a trust for a purpose. We'll talk about that in a second. And then it says what's in the trust. And what is in the trust are the assets sold by Crossroads to Reesers, excuse me, the supplier trust. First it's the produce. The suppliers sell it to Crossroads. That produce is impressed with trust. Then when Crossroads sells the produce, what's impressed with the trust is what Crossroads gets back. And what Crossroads gets back proceeds is a breach of contract case at the end of the day. If when Reesers paid a lot of money through the years, as Mr. Muir has pointed out, when that money was in the hands of Crossroads, it was impressed with the trust. But until that money gets into Crossroads' hands, all Crossroads has is a breach of contract case. Well, I don't, counsel, I don't quite read the statutory provision. And I'm looking at 499EC2122. And the description of what they put into that trust is extremely broad to me, not just assets. But it talks about receivables or proceeds, commodity products. If this is accomplishing what it appears that Congress is trying to accomplish, they're trying to give a priority to these sellers of commodity and almost, it looks to me like, an absolute control. Whether you want to call it a contract, whatever you want to call it, they get it. How is that not being read that way, as broad as the language may be? I'm reading it pretty broad, but I'm reading it the way it's said. It's the right that Crossroads has, Your Honor. Yes. Crossroads has a right against Reesers to common law or by virtue of the agreement. We're not dealing with common law here, counsel. I think their basic right, even though it's a contract, they're dealing under the PACA, the statute that they have. Yes, Your Honor. But I don't think you can analyze the PACA rights without also looking at what's in the trust. The cases do say that PACA creates a trust. And where there's blanks to be filled in, we look to common law trust. Well, you put your figure on right. I even was sharing with my clerks that if we can still learn how to diagram a sentence, we're going to figure out exactly what this really says. So I appreciate what you said. Absolutely, Judge. Mr. Muirs is a PACA pro, and I am a PACA rookie. Sometimes being a rookie is an advantage because you start from the beginning. You try to get to what the answers are. Well, back to the cutting up. I mean, the language talks about all transactions, all inventories, any receivables or proceeds from the sale of such commodities or products. Well, it's commodities. And I think, Your Honor, the line- It's proceeds from the sale. Proceeds from the sale are the contract right to recover for the money. And if you have a defense to that, then the money's not owed. The settle- That gut the trust? If there can be a side deal between these two guys and the supplier never gets the money, never gets the proceeds. They're just cut off because these two have an agreement. Your Honor, whatever the agreement is is what the agreement is, right? If it's for 90 cents on the dollar, that's the contract. The creation or the imposition of the trust can't improve crossroads rights. Crossroads rights are the rights that it had against Reesers, with all due respect. So your focus here is really on the rights of crossroads. You really don't want to talk about the rights of the suppliers. Your Honor, the suppliers are certainly the beneficiaries of the supplier's trust, but they can't assert PACA trust claims directly against Reesers, right? And so- I don't know about that, but you say. Isn't it sort of a privity problem? You can't- the suppliers can't leapfrog directly to Reesers. They have to take what crossroads has. That's correct, Your Honor. Privity is exactly what the case law says. And when you again cut up the statute in trust for the benefit of all unpaid suppliers of such commodities involved in the transaction, singular, not involved in all transactions all the way to the end of the time, because I think what happens, I'm not a PACA pro, is that you have lots of these multiple chains. You've got the farmer who sells to the first middleman- Are you saying transactions is singular here? In the transaction, Your Honor, in the middle of section 2- Until full payment of the sums owing in connection with such transactions. Your Honor, I think we're at different spots. I'm in the last line of C2. I'm not. I'm in the middle of C2. It's in trust for the benefit of- trust law. Create a beneficiary. Who's the beneficiary? Trust is created for the benefit of all unpaid suppliers involved in the transaction. And so that's where the privity concept comes in. Congress didn't say that all end buyers- What? The last transaction that occurred before this business relationship folded? That's a very narrow view. It's the view of the statute, with all due respect, Your Honor. Or should we read it more broadly to import the intent behind the statute? Well, the ultimate- It's in C1. The ultimate intent behind the statute, Your Honor, isn't to cover transactions like this at all. Say again? The ultimate intent of the statute's pretty clear, and it's not to affect transactions like this one, before Your Honor, at all. Congress wanted to protect suppliers when purchasers of produce granted liens in their assets to secure lenders. That's a big change, right? Most secure transaction law, the bank gets its lien on the property, and the unpaid suppliers don't. Suppliers have this right that was created. But that purpose, Your Honor, if you're looking to the underlying purpose, is pretty clearly set forth in Section 1. Identifies a burden, says the burden is when buyers grant, or excuse me, encumber or give lenders a security interest in, then the collateral. You would read the purpose of PACA very narrowly. It's basically to protect suppliers against a relationship by crossroads and reasons that may involve a security interest or a bank or something like that. That's what the statute says, Judge. And of course, we're talking about the specifics of this case. One interesting thing, when you do drill down to the cases that are cited by the plaintiffs, or excuse me, by yours, most of those cases do involve the exact kind of transaction that Congress was talking about, conflicts in priority between secured lenders and borrowers. That's not what we have here. So that's how you would read this. Unless and until there's a security interest that would fall directly within the verbiage of this C-1 provision. That's the only protection that the suppliers have. If there's a security interest, they can get around that, but they can't get around a set-off. Your Honor, I think I would be a little less aggressive with my argument than that and say that when the court's trying to interpret these trusts and try and decide these rights of the parties, that the court should look at the purpose and say, okay, well, this really doesn't fit within the stated purpose. Now, maybe there's another transaction out there that fits completely and cleanly within two. That's not in front of us. And so I apologize, Your Honor, I don't have a better answer. To me, Counsel, it is in front of us because that's what's bothering me. You keep saying, well, look at that statute. You look at that PACA 1 as to the purpose and what Congress was writing there. That's pretty broad language. When they talk about all and all the accounts and receivables, that's the reason I told you a while ago, if I construe this as broadly as what I appear to read that statute, you've got a road to hold to kind of convince me differently. I mean, that's just how blunt it is with me because that's extremely broad. And the purpose means, clearly, to protect the producers of agriculture goods. Yes, Your Honor, but if we could maybe parse the sentence, if you could indulge me to parse the sentence a little bit. Against what? Protect against what? The loss of money. No, Your Honor, to protect against transactions where the supplier encumbers or gives lenders a security interest in the transaction. That's right there, Judge. I see that. How about the part about who have not made payment for the perishable goods? The suppliers in this case have not received payment for the perishable goods. They haven't, Your Honor. They have not, you agree? Yes, ma'am. They have not. So, in the statutory language, though, where it says, talks about them not receiving payment for goods, it's talking about them not receiving payment from Crossroads. It's not talking about them not receiving payment from Reesers. Right. There's no case law out there that says everybody in the chain has a trust duty to everybody else in the chain. And Mr. Muir has talked about Lenny Perry's produce. You guys aren't going to be surprised that I would prefer that you not follow Lenny Perry's produce. And that's one of the things that I think that case doesn't analyze correctly, is it doesn't realize that there are multiple trusts in the chain, that it's not just a single trust encompassing 1, 2, 3, 4, 5, 6, however many elements there are in the set of transactions. Can I ask you one quick question? I see we're running out of time. So, your opposing counsel described the relationship as sort of a floating one. And do you see, or will the record bear out that the rebate issue was part of the floating transactions between Reesers and Crossroads? I am terribly sorry, Your Honor. I don't quite understand that question. No, I'm trying, I mean, it seems to me that the rebate issue is intertwined with the sale and payment of produce between Crossroads and Reesers. And I'm just trying to make sure that the rebate issue is not somehow some separate deal that doesn't have to do with the produce transactions. That's correct, Your Honor. I think per the stipulation, the only business dealings between Reesers and Crossroads were produce. And so the rebates were rebates on produce in the big sense of all produce that was sold between the parties. So the rebates were tied to produce sales. The rebates were tied to probate, to produce sales. We started talking about trusts, and so we all started talking about probates, Your Honor. Yes, that's correct. Your Honors, thank you very much. I appreciate it. Thank you both for your arguments this morning. The case is submitted.